UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

TALARICO BROS. BUILDING CORP., et al.,

                        Plaintiffs,

        v.                                          **DECISION AND ORDER**

                                                    17-CV-1041S

UNION CARBIDE CORP., et al.,

                        Defendants.

═══════════════════════════════════

## I.      Introduction

This is a Resource Conservation and Recovery Act citizen suit, 42 U.S.C. § 6972 ("RCRA"), with related state tort claims by property owners in Niagara and Erie Counties, New York, against the present and former owners of chemical plants that allegedly released radioactive slag deposited on their properties (see Docket No. 26, Am. Compl. ¶¶ 1-6, 22-23, 36-38, 63, 70-78).

Before this Court is Defendants' Motion to Dismiss (Docket No. 29).  For the reasons stated herein, Defendants' Motion to Dismiss (id.) is granted.

## II.      Background

Twenty-eight Plaintiffs[1] who own twenty affected properties collectively sue three chemical plant operators (Docket No. 26, Am. Compl. ¶¶ 10-31), alleging that Defendants Union Carbide Corporation, Occidental Chemical Corporation, and Bayer Cropscience

---

[1] Among these Plaintiffs are Robert Ward and Betty Moticka, who own property on Creek Road in Lewiston (Docket No. 26, Am. Compl. ¶ 21) with a mortgage held by Intervenor MTGLQ Investors, LP. MTGLQ Investors moved to intervene, which was granted, Talarico Bros. Builders Corp. v. Union Carbide Corp., 2021 WL 732692 (W.D.N.Y. Feb. 25, 2021) (Skretny, J.), Docket No. 60.

Inc. (or their predecessors, <u>see</u> <u>id.</u> ¶¶ 33-35) buried radioactive slag on their respective properties over the twentieth century (Docket No. 26, Am. Compl. ¶¶ 1, 49; <u>see</u> Docket No. 29, Defs. Memo. at 2).

Plaintiffs allege that radiation levels on their properties became subject to federal and state agency scrutiny since the 1970s, with reports concluding that there were "elevated levels of radiation" in and around those properties (Docket No. 29, Defs. Memo. at 4).  They claim that they suffer from decreased property values, stigma damages, medical monitoring costs for unspecified conditions, and investigation and cleanup costs (Docket No. 26, Am. Compl. ¶ 47; <u>see</u> Docket No. 29, Defs. Memo. at 4).  Plaintiffs conclude that Defendants placed the radioactive slag on Plaintiffs' properties, making what they term "an awful mess," and "that it was high time they clean it up" (Docket No. 34, Pls. Memo. at 1).  Defendants note, however, that the Amended Complaint does not specify any present physical injuries to their properties (Docket No. 29, Defs. Memo. at 4).

The First Cause of Action is the citizen suit under RCRA for Defendants allegedly generating and depositing radioactive solid wastes on Plaintiffs' parcels (<u>id.</u> ¶¶ 71-73).

The Second Cause of Action alleges New York State common law strict liability based on ultrahazardous or abnormally dangerous activity (<u>id.</u> ¶¶ 80-81).  The Third Cause of Action alleges common law negligence (<u>id.</u> ¶¶ 83-86).  The Fourth Cause of Action alleges a private nuisance (<u>id.</u> ¶¶ 88-93).  The Fifth Cause of Action then alleges a public nuisance (<u>id.</u> ¶¶ 95-98).  Finally, the Sixth Cause of Action alleges trespass (<u>id.</u> ¶¶ 100-02).

Plaintiffs seek injunctive relief under RCRA, including ordering Defendants to fully evaluate each property and remove all radioactive solid wastes thereupon, awarding attorneys' fees (id. ¶ 103).  Plaintiffs also seek recovery of monetary damages, including future costs for long-term medical monitoring to evaluate health risks association with exposure to radioactive waste; punitive damages; and such other and further relief (id.).

### A.  Motion to Dismiss (Docket No. 29)

Defendants moved to dismiss the Amended Complaint (Docket No. 29; see Docket No. 28, Order granting leave to file oversize memorandum)[2].  The parties stipulated to a briefing schedule (Docket No. 12; see Docket No. 31, Order adopting schedule), with responses due January 30, 2018, reply by February 6, 2018.  Plaintiffs moved (Docket No. 38) to strike Defendants' Reply or grant leave to file a Sur-Reply (Docket No. 36).  The motion to strike was denied but leave to file a Sur-Reply was granted (Docket No. 46; see Docket No. 47, Plaintiffs' Sur-Reply).

### III.   Discussion

### A.  Applicable Standards

#### 1.  Motion to Dismiss

Defendants have moved to dismiss on the grounds that the Complaint fails to state a claim for which relief cannot be granted (Docket No. 17).  Under Rule 12(b)(6) of the

---

[2]In support of their Motion to Dismiss, Docket No. 29, Defendants submit the Declaration of Union Carbide's counsel, with exhibits, and Memorandum of Law, id.  In response, Plaintiffs jointly submitted their Memorandum of Law; attorney's Declaration with exhibits, Docket No. 34.  Defendants reply with the Reply Declaration of Union Carbide's counsel, with exhibits; the Declaration of Susan Brice, with exhibit; and Reply Brief, Docket No. 36.

The parties then supplemented, Docket Nos. 44, 55, Defendants' Motions for Leave to Supplement; Docket No. 45, 56, Orders granting motions.  Defendants supplemented their papers on the Environmental Protection Agency ("EPA") resuming investigation and remediation in 2018 and 2019, Docket No. 44, Exs. A, B; Docket No. 55, Exs. A, B; Docket No. 47, Pls. Sur-Reply; Docket No. 48, Pls. Atty Decl.; Docket No. 49, Defs. Reply; Docket No. 55, Defs. Supplemental papers.

Federal Rules of Civil Procedure, this Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court later held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion addresses to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

### 2.  Pleading Requirement, Fed. R. Civ. P. 8

Federal Rule of Civil Procedure 8 requires a pleading afford Defendants "fair notice of what the plaintiff's claim is and the ground upon which it rests," Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary Order) (citations omitted) (Docket No. 29, Defs. Memo. at 5).  The pleading must state a short and plain statement of the grounds for jurisdiction, that the pleader is entitled to relief, and the demand for relief (including alternative forms), Fed. R. Civ. P. 8(a)(1)-(3).  Again, under Iqbal, supra, 556 U.S. at 678, these allegations need to have sufficient facts to plausibly state a claim on its face (id.).

### 3.  RCRA

RCRA "'is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste,'" George v. Reisdorf Bros., Inc., 696 F. Supp. 2d 333, 342 (W.D.N.Y. 2010) (McCarthy, Mag. J.) (on consent, quoting Incorporated Village of Garden City v. Genesco, Inc., 596 F. Supp. 2d 587, 593 (E.D.N.Y. 2009)).

To maintain a citizen suit under Section 113(h) of Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(h), or Section

6972(b)(2)(B)(ii) of RCRA, Plaintiffs need to allege that Defendants were generators or transporters of "solid or hazardous waste," or owners or operators of a treatment, storage, or disposal facility; that Defendants contributed to past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and that the waste may present an "imminent and substantial endangerment to health or the environment," 42 U.S.C. § 6972(a)(1)(B) (Docket No. 29, Defs. Memo. at 26).

"Hazardous waste" is defined in RCRA as

"a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may-

"(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

"(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."

Id. § 6903(5).

"Solid waste," in turn, is defined as

"any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923)."

Id. § 6903(27) (emphasis added).  Defendants also assert that this waste must be discarded to meet the statutory definition (Docket No. 36, Defs. Reply Memo. at 27).

Therefore, certain radioactive materials are exempt from the RCRA definitions of "solid or hazardous waste," id.; such waste is governed exclusively or collectively under

the Atomic Energy Act. The Atomic Energy Act, in turn, defines "source material" to include uranium or thorium or any combination thereof, 10 C.F.R. § 40.4 (see Docket No. 34, Pls. Memo. at 27; Docket No. 36, Defs. Reply Memo. at 9).

EPA regulations define "hazardous waste means any material which is defined to be hazardous waste in accordance with 40 C.F.R. § 261.3, 'Definition of Hazardous Waste,'" 40 C.F.R. § 266.210 (see also Docket No. 36, Defs. Reply Memo. at 11). Section 261.3, in turn, defines types of waste and situations that are (or are not) hazardous, 40 C.F.R. § 261.3. One exclusion here is "hazardous waste containing radioactive waste is no longer a hazardous waste [that] when it meets the eligibility criteria and conditions of 40 C.F.R. part 266, Subpart N ('eligible radioactive mixed waste')," 40 C.F.R. § 261.3(h)(1).

Not all radioactive waste is the same. The regulations recognize two types of such waste. Low-Level Radioactive Waste ("LLW") in 40 C.F.R. part 266, Subpart N, is defined as "a radioactive waste which contains source, special nuclear, or byproduct material, and which is not classified as high-level radioactive waste, transuranic waste, spent nuclear fuel, or byproduct material as defined in section 11e(2) of the Atomic Energy Act," 40 C.F.R. § 266.10; see 42 U.S.C. § 2014(e)(2) (Atomic Energy Act definition of byproduct material as "tailings or wastes produced by the extraction or concentration of uranium or thorium form any ore processed primarily for its source material content"); 10 C.F.R. § 61.2 (Nuclear Regulatory Commission definition of "waste"). The Nuclear Regulatory Commission, in turn, defines "waste" as

> "those low-level radioactive wastes containing source, special nuclear, or byproduct material that are acceptable for disposal in a land disposal facility. For the purposes of this definition, low-level radioactive waste means radioactive waste not classified as high-level radioactive waste, transuranic

waste, spent nuclear fuel, or byproduct material as defined in paragraphs (2), (3), and (4) of the definition of Byproduct material set forth in § 20.1003 of this chapter,"

10 C.F.R. § 61.2.

The second type of radioactive waste is high-level radioactive waste, consisting of the product of uranium or thorium, included as "source, special nuclear, and byproduct materials" under the Atomic Energy Act, 42 U.S.C. § 2014(e)(2); see 10 C.F.R. § 40.4 (definitions of "source material," "special nuclear material," and "byproduct material"). This waste is the radioactive material excluded from the "solid waste" definition of RCRA, 42 U.S.C. § 6903(27).

Low-Level Mixed Waste in the EPA regulations is "a waste that contains both low-level radioactive waste and RCRA hazardous waste," 40 C.F.R. § 266.210.  Thus, these regulations address mixing radioactive and non-radioactive materials.

The regulations, however, do not address expressly waste that is the mixture of low-level radioactive waste and high-level radioactive waste, source, special nuclear, or byproduct material as defined by the Atomic Energy Act and Nuclear Regulatory Commission regulations.  That is treated in EPA Guidelines cited by Plaintiffs (Docket No. 34, Pls. Atty. Decl. Ex. K, EPA, "Guidance on the Definition and Identification of Commercial Mixed Low-Level Radioactive and Hazardous Waste" (Mar. 4, 1998) (hereinafter "EPA Guidance")); see also EPA, Office of Solid Waste and Emergency Response, "Guidance on the Definition and Identification of Commercial Mixed Low-Level Radioactive and Hazardous Waste," OSWER 9443.00(02), 1989 WL 1181499 (Oct. 4, 1989).

Pursuant to that Guidance, hazardous waste mixed with low-level radioactive waste is disposed of in compliance with RCRA regulations, id. at *3.  When asked in that Guidance whether low-level radioactive wastes is exempt from RCRA because they are source, special nuclear, or byproduct materials, the EPA responded that "except for certain ores containing source material, which are defined as source material in 10 CFR 40.4(h), and uranium and thorium mill tailings or waste, [Nuclear Regulatory Commission] and EPA consider that only the radionuclides themselves are exempt from RCRA," id. at *4 (see Docket No. 34, Ex. K, at 3).  After discussing the RCRA definitions of solid waste and hazardous waste and their exclusion of source, special nuclear, and byproduct materials, and defining these sources of high-level radioactive material, the EPA stated that source, special nuclear, and byproduct materials may be mixed with other radioactive or non-radioactive materials, id.

4.  Standing

To establish standing under Article III of the United States Constitution, "an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling,'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

5.  Statutes of Limitations

Defendants argue that the applicable statute of limitations for this statute is five years, 42 U.S.C. § 6972(a)(1)(B), 28 U.S.C. § 2462 (general federal statute of limitations) (Docket No. 29, Defs. Memo. at 14-15), see Glazer v. American Ecology Env'l Servs. Corp., 894 F. Supp. 1029, 1044 (E.D. Tex. 1995) (barring claims before notice was given); see also Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.,

913 F.2d 64, 75 (3d Cir. 1990), <u>cert. denied</u>, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d

1100 (1991).  Section 2462 provides that

> "except as otherwise provided by Act of Congress, an action, suit or
> proceeding for the enforcement of any civil fine, penalty, or forfeiture,
> pecuniary or otherwise, shall not be entertained unless commenced within
> five years from the date when the claim first accrued if, within the same
> period, the offender or the property is found within the United States in order
> that proper service may be made thereon,"

28 U.S.C. § 2462.

One district court held that RCRA authorizes private causes of action only for

waste presenting imminent threat of harm, thus, these claims are not subject to the default

federal statute of limitations, <u>Ergon, Inc. v. Amoco Oil Co.</u>, 966 F. Supp. 577, 581 (W.D.

Tenn. 1997).  Another court concurred that there is no statute of limitations for RCRA

claims, because such claims are equitable, with citizen litigants seeking injunctive relief

only on behalf of the United States, <u>A-C Reorganization Trust v. E.I. DuPont de Nemour

& Co.</u>, 968 F. Supp. 423, 427 (E.D. Wisc. 1997).  Any financial penalties paid by a RCRA

defendant benefits the United States and not the citizen litigants, <u>id.</u>

For Plaintiffs' state common law claims, the New York CPLR sets a statute of

limitations of three years, N.Y. CPLR 214(4), (5), from the date of discovery of the injury

or the date, through the exercise of reasonable diligence such injury should have been

discovered by plaintiff, CPLR 214-c(2).

### 6.  Laches

The doctrine of laches bars a claim where "(1) the plaintiff was aware of the claim;

(2) the plaintiff inexcusably delayed in taking action; and (3) the delay prejudiced the

defendant," <u>Williams v. National Gallery of Art, London</u>, No. 16CV6978, 2017 WL

4221084, at *12 (S.D.N.Y. Sept. 21, 2017) (Docket No. 29, Defs. Memo. at 15-16).  As

noted by the Williams court, "the affirmative defense of laches is generally not appropriately raised on a motion to dismiss, but 'when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss,'" id. at *12 (quoting Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999)).

       7.  Primary Jurisdiction

As held by the Second Circuit in Ellis v. Tribune Television Co., 443 F.3d 71, 81 (2d Cir. 2006),

> "The doctrine of primary jurisdiction is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.' United States v. W. Pac. R.R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The doctrine's central aim is to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they 'do not work at cross-purposes.' Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir.1996). 'Whether there should be judicial forbearance hinges therefore on the authority Congress delegated to the agency in the legislative scheme.' Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d Cir.1994) (citing Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 304, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973)); see also Gen. Elec. Co. v. MV Nedlloyd, 817 F.2d 1022, 1026 (2d Cir.1987)."

While there is no fixed formula for applying primary jurisdiction, W. Pac. R.R., supra, 352 U.S. at 64, courts have considered four factors in applying the doctrine.

> "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made."

Ellis, supra, 443 F.3d at 82-83; see also National Commc'ns Ass'n v. AT&T Co., 46 F.3d 220, 222 (2d Cir.1995).

8.  Supplemental Jurisdiction, 28 U.S.C. § 1367

Subject matter jurisdiction over the state law claims (such as the Second through Sixth Causes of Action) may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).  This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, Federal Practice and Procedure § 3722, at 115 (Jurisd. rev. 4th ed. 2018).  This Court, in its discretion under 28 U.S.C. § 1367(c), may decline to hear supplemental state law claims, 14C Federal Practice and Procedure, supra, § 3722, at 122.

Original federal jurisdiction here arises from Plaintiffs' RCRA First Cause of Action (Docket No. 26, Am. Compl. ¶¶ 71-73).  Plaintiffs' state law negligence, nuisance, trespass, and ultrahazardous or abnormally dangerous activities claims share the same nucleus of operative facts as their federal RCRA claims.  Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998).

B.  Parties' Contentions

1.  Defendants (Docket No. 29)

Defendants first contend that the Amended Complaint contains "improper conclusory and collective pleading" which fail to allege the specific actions of each Defendant (Docket No. 29, Defs. Memo. at 2, 5-10).  There are no factual assertions in

the Amended Complaint that "plausibly connects any Defendant and any of the offending materials allegedly present on Plaintiffs' properties" (id. at 2, 5-8). The Oak Ridge Report surveyed the contaminated soil and concluded that it came from a single source (id. at 6 n.1; id., Defs. Atty. Decl., Ex. A, Oak Ridge Report at 5; see Docket No. 26, Am. Comp. ¶ 38 (citing Oak Ridge Report)). The Oak Ridge Report, however, does not identify the source. That report found concentrations of radium and uranium that indicated they came from a single source (Docket No. 29, Defs. Atty. Decl., Ex. A, Oak Ridge Report at 5). Plaintiffs allege that Union Carbide deposited uranium, thorium (among other elements) in its slag (Docket No. 26, Am. Compl. ¶ 50), while the other Defendants are alleged to deposit other rare elements but not uranium or thorium (id. ¶¶ 52, 54).

Defendants conclude that the Amended Complaint failed to meet the Rule 8 pleading requirements (Docket No. 29, Defs. Memo. at 6).

Defendants fault Plaintiffs for making their key allegations upon information and belief, thus arguing these are insufficient to state a claim (id. at 6-8). They conclude these pleadings violate Iqbal (id. at 2, 6).

Defendants next argue that Plaintiffs fail to plead any injury, failing to allege facts to support the purported damages claims (id. at 8). Plaintiffs failed to link Defendants' conduct to Plaintiffs' injuries (id. at 9). The Amended Complaint also fails to allege concrete, particularized, and actual or imminent injury that is factually traceable to any Defendant for Article III standing (id. at 2, 10-11). Plaintiffs also failed to allege successor liability for alleged activities in 1940s to 1970s (id. at 9-10).

With public knowledge of radiation in the 1970s and 1980s, Defendants argue that Plaintiffs' claims are time barred, either three years for the New York state law claims or

five years for RCRA claim (id. at 2, 11).  Defendants deny that continuing tort doctrine sustains this action (id. at 13-14).

Alternatively, Defendants argue that Plaintiffs' claims are barred by their laches from Plaintiffs' inexcusable delay in pursuing their claims from the disposal of radioactive materials (id. at 15-16).

Defendants assert that this Court lacks subject matter jurisdiction under CERCLA § 113(h), 42 U.S.C. § 9613(h) (id. at 3, 17).  Plaintiffs allege that the EPA was investigating or remediating areas in or around Plaintiffs' properties, depriving this Court of subject matter jurisdiction from the pre-enforcement review bar of Section 113(h) of CERCLA (id. at 3, 17-20).  With the highly technical and scientific issues surrounding liability and the ongoing involvement of the EPA, Defendants conclude that the primary jurisdiction doctrine should apply to have this matter considered by the EPA and not this Court (id. at 3, 23-26).

Next, Defendants argue the Amended Complaint fails to allege the elements of a RCRA citizen suit, that the materials deposited on their properties are subject to RCRA, that Defendants disposed of those materials, or that these materials posed more than "remote, speculative, or de minimis endangerment" (id. at 3, 26).  Radioactive materials are not "solid waste" under RCRA (id. at 27-30).  See Pennsylvania v. Lockheed Martin Corp., 684 F. Supp. 2d 564, 578-79 (M.D. Pa. 2010) (allegations of release of strontium-90 was sufficient to meet CERCLA's statutory definition of a "nuclear incident" for an exemption from CERCLA liability); New Mexico v. Watkins, 969 F.2d 1122, 1131 (D.C. Cir. 1992) (per curiam) (statutory and regulatory definitions excludes from definition of "solid waste" "source, special nuclear, or byproduct material as defined by the Atomic

14

Energy Act," but definitions are unclear about mixed radioactive and other waste). Plaintiffs also failed to allege that the radioactive materials were "discarded" to be actionable under RCRA, cf. 42 U.S.C. § 6903(27) (solid waste definition including "other discarded materials") (id. at 30). The radioactive material Plaintiffs allege is bedding under asphalt surfaces and gravel (Docket No. 26, Am. Compl. ¶ 3; Docket No. 29, Defs. Memo. at 30) and thus not "discarded" as waste (Docket No. 29, Defs. Memo. at 30).

Defendants next argue that, assuming solid waste was alleged, Plaintiffs had not adequately alleged that Defendants "contributed" to the disposal of solid waste (id. at 30-33). Plaintiffs also allegedly failed to state that the radioactive material presented an imminent and substantial endangerment (id. at 33-37). RCRA has available only injunctive relief and attorneys' fees and court costs and not for compensatory or punitive damages, 42 U.S.C. § 6972(a)(2), (e); see Meghrig v. KFC Western, Inc., 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (compensation not a remedy under RCRA) (id. at 37).

The Amended Complaint also fails to allege the state causes of action or support recovery of damages thereunder (id. at 3, 38-46). Plaintiffs fail to allege any present physical injury and, while seeking future medical monitoring, they fail to identify any diseases that require monitoring (id. at 3, 46-47). Plaintiffs also fail to plead facts that support imposition of punitive damages under New York law, failing to allege intentional and deliberate conduct (id. at 3, 47-48).

### 2. Plaintiffs' Response (Docket No. 34)

First, Plaintiffs assert that Defendants seek to test the Amended Complaint on a more stringent standard than plausibility (Docket No. 34, Pls. Memo. at 1). Plaintiffs claim

they allege sufficient claims under Rule 8 (id. at 1-2).  They distinguish the role of each Defendant in disposal of radioactive slag (id. at 2-4).  They could allege upon information and belief and that heightened pleading need only occur for fraud allegations, those not made here (id. at 4-6).  Plaintiffs next claim they alleged their injuries (id. at 6).  They did not need to prove causation in their pleadings (id. at 7).  They also claim they sufficiently pled successor liability, asserting that Defendant Occidental Chemical is the corporate successor to Oldbury Electro-Chemical Company, Bayer Cropscience the successor to Stauffer Chemical Company, and Union Carbide the successor to Electro Metallurgical Company (id. at 7-9; Docket No. 26, Am. Compl. ¶¶ 34, 35, 33).

Plaintiffs claim they have standing from alleging at a minimum the low causation threshold for pleadings (Docket No. 34, Pls. Memo. at 10; see Docket No. 26, Am. Compl. ¶¶ 48-61).  By alleging the presence of radioactive solid wastes that pose an imminent and substantial threat to health and the environment, Plaintiffs conclude that they met the injury in fact element for standing (Docket No. 34, Pls. Memo. at 11).

Next, Plaintiffs argue that their claims are timely (id. at 11-16).  The common law claims seek injunctive relief to halt a continuing nuisance and are thus timely (id., citing Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004)).  The Amended Complaint does not allege when any Plaintiff discovered or was informed there was radioactive slag on their property or whether a Plaintiff's injuries were "patent" rather than "latent" (id. at 13-14).  Whether Plaintiffs' injuries were patent or latent is fact-specific and not suitable for decision on a Motion to Dismiss (id. at 14 n.7).  They deny that RCRA has a five-year limitations period because Plaintiffs are not seeking civil fines or penalties (id. at 14), merely that the subject waste poses an imminent and substantial endangerment

(id. at 14-15).  As for the defense of laches, Plaintiffs note that this defense rarely applies in environmental claims and, as an affirmative defense, also is fact-intensive and should not be resolved a Motion to Dismiss (id. at 15).

Plaintiffs assert that Defendants' jurisdictional arguments are premature because the ban to judicial intervention bars challenges to federal remediation efforts and the EPA was not actively engaged in removal action when the suit commenced (id. at 16).

Plaintiffs deny dismissal under the primary jurisdiction doctrine because there was no EPA investigations or remediation, Plaintiffs believe this Court is competent to consider the scientific and technical aspects of this case, and there is no chance of inconsistency between this Court and the EPA regarding their properties (id. at 22-25).

Plaintiffs next argue that they alleged all the elements for a RCRA claim, that radioactive waste is "solid waste" as defined in RCRA (id. at 25-26) and not radioactive "source material" under the Atomic Energy Act (id. at 27-29).  They also contend that the radioactive waste here also is not "byproduct material" under the Atomic Energy Act (id. at 30-31).

Plaintiffs then declare that they are not seeking compensatory damages (Docket No. 34, Pls. Atty. Decl. ¶ 22; Docket No. 34, Pls. Memo. at 40), despite the Amended Complaint seeking compensatory and punitive damages and payment of costs for future health monitoring (Docket No. 26, Am. Compl. ¶ 103 c., e., d.).

3.  Defendants' Reply (Docket No. 36)

Defendants reply that Plaintiffs' failure to give each Defendant notice of what harm it allegedly caused each Plaintiff is fatal to the Amended Complaint (Docket No. 36, Defs. Reply Memo. at 1-7).  They reiterate that Plaintiffs' claims are time barred (id. at 7-8 (state

17

law claims), 8-9 (RCRA)) and fail to state a claim under RCRA (id. at 9-15).  Defendants deny that the Amended Complaint alleged a "patent injury," which they define as an immediately apparent injury such that "'there is no interval between the alleged exposure and the resulting harm'" (id. at 8, quoting Suffolk Cty. Water Auth. v. Dow Chem. Co.,121 A.D.3d 50, 58, 991 N.Y.S.2d 613, 620 (2d Dep't 2014)).  Next, they reply that CERCLA section 113(h), 42 U.S.C. § 6972(b)(2)(B)(ii), bars Plaintiffs' action, deeming their action to be a challenge to the EPA's removal authority (id. at 16-19).  They conclude that this case also should be dismissed pursuant to the primary jurisdiction doctrine and this Court should exercise its discretion in declining to hear this case (id. at 20, citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)).

4.  Plaintiffs' Sur-Reply (Docket No. 38)

In their denied Motion to Strike Defendants' Reply papers (Docket No. 36; see Docket No. 46), Plaintiffs attached their Sur-Reply that Defendants inappropriately rely upon a February 22, 2018, email from the EPA (Docket No. 47, Pls. Sur-Reply; see Docket No. 48, Pls. Atty. Decl.; Docket No. 38, Ex. A, proposed Sur-Reply; Docket No. 36, Brice Decl. Ex. 1; id., Defs. Reply at 18) that purports to announce the EPA's engagement in removal activity at some of Plaintiffs' properties, that occurred after Plaintiffs opposed their Motion to Dismiss (Docket No. 47, Pls. Sur-Reply Memo. at 1).

5.  Defendants Supplemental Reply on EPA Remediation (Docket Nos. 44, 55)

Defendants then sought leave to supplement their Reply (Docket Nos. 44, 55), which this Court granted (Docket Nos. 45, 56).  First, Defendants added community update notices from the EPA for September 2018 which indicated the beginning of

removal activities (Docket No. 44, Defs. Atty. Decl., Ex. A; see id. Ex. B, email, Kevin Hogan, Esq., to Margo Ludmer of the EPA, Oct. 3, 2018, announcing removal activities). The later supplementation are emails from October 2019 confirming the EPA's removal activities (Docket No. 55, Defs. Atty. Decl. Exs. A, B).   Despite allowing Plaintiffs to respond to these supplements (Docket No. 56, Order), Plaintiffs did not respond.

      C.  Failure to State a Claim under RCRA

This Court first addresses the basis for original jurisdiction in this case, Plaintiffs' RCRA claims alleged in the First Cause of Action.

      1.  Substantive Claims

Defendants argue that the RCRA does not cover radioactive waste (Docket No. 29, Defs. Memo. at 26-30).  Plaintiffs analogized their injuries to those in an EPA consent decree in a RCRA matter in Idaho, where the EPA found radioactive phosphorus slag waste was governed by RCRA despite being radioactive waste (Docket No. 34, Pls. Memo. at 25-26; Docket No. 34, Pls. Atty. Decl. ¶ 17, Ex. J, In re: Elemental Phosphorus Slag, EPA Docket No. 10-96-0045-RCRA, at 9, hereinafter "EPA Idaho Order").  Plaintiffs, however, concede RCRA's exception for radioactive materials regulated under the Atomic Energy Act (Docket No. 36, Defs. Reply Memo. at 9).

The RCRA radioactive exception excludes "source, special nuclear, or byproduct material as defined by the Atomic Energy Act" from the RCRA definition of solid waste, 42 U.S.C. § 6903(27), where the Atomic Energy Act, in turn, defines source material to include uranium or thorium or any combination thereof, 10 C.F.R. § 40.4 (see Docket No. 34, Pls. Memo. at 27; Docket No. 36, Defs. Reply Memo. at 9).

The parties here dispute whether a mixture of uranium or thorium and other radioactive materials makes the deposited material excepted from the definition of "solid waste" under RCRA.  Plaintiffs argue that this is mixed waste and covered by RCRA (Docket No. 34, Pls. Memo. at 27-28; id., Pls. Atty. Decl. Ex. K, EPA Guidance), see also EPA, Office of Solid Waste and Emergency Response, "Guidance on the Definition and Identification of Commercial Mixed Low-Level Radioactive and Hazardous Waste," OSWER 9443.00(02), 1989 WL 1181499 (Oct. 4, 1989).  This Guidance states that low-level radioactive materials are regulated by both the Nuclear Regulatory Commission (under the Atomic Energy Act) and the EPA (under RCRA), 1989 WL 1181499, at *1. This Guidance also acknowledges that low-level radioactive waste (or "LLW") containing hazardous waste defined under RCRA is "Mixed LLW" and such is regulated by both agencies.  (Id.)

Defendants contend that "mixed waste" is a statutory defined term for radioactive and non-radioactive waste (Docket No. 36, Defs. Reply Memo. at 11, citing 42 U.S.C. § 6903(41)), cf. New Mexico v. Watkins, supra, 969 F.2d at 1131.  Defendants argue the Amended Complaint alleges this mixture of radioactive and non-hazardous solid waste and thus is not actionable under RCRA (id. at 12).  Even if there is dual Nuclear Regulatory Commission-EPA jurisdiction, Defendants conclude that Plaintiffs claims arise from the exempt radioactive portions of the slag and not the RCRA solid waste portion (id.).  Defendants, however, did not address the EPA Guidance regarding Mixed LLW.

The Amended Complaint alleges that the radioactive slag includes uranium, thorium and/or radium (Docket No. 26, Am. Compl. ¶¶ 37, 50, 58 (Union Carbide's production)), phosphorus (id. ¶¶ 52, 59 (Occidental's production)), or other rare earth

elements (id. ¶ 54 (Bayer/Stauffer Chemical's production)).  Plaintiffs argue that the slag has a mixture of uranium and/or thorium (source material governed by the Atomic Energy Act) and radium or other elemental metals which were still under RCRA's jurisdiction (Docket No. 34, Pls. Memo. at 27-28).  These allegations do not allege non-radioactive solid waste being involved.  Plaintiffs allege that Defendants deposited radioactive slag (Docket No. 26, Am. Compl. ¶ 3; see id. ¶ 5).

Plaintiffs thus argue the radioactive slag was an exclusive mixture of radioactive materials.  This differs from the quandary presented in New Mexico v. Watkins, supra, 969 F.2d at 1131, of whether the RCRA definition exception for radioactive materials is applicable because radioactive waste was mixed with non-radioactive material, see 42 U.S.C. § 6903(41) (Docket No. 36, Defs. Reply Memo. at 11).

The EPA Guidance for low-level radioactive waste is informative, as "provid[ing] guidance on when and how RCRA should apply to the management of low-level radioactive waste," EPA, Office of Solid Waste and Emergency Response Directive, "CERCLA Compliance with Other Laws Manual: Part II, Clean Air Act and Other Environmental Statutes and State Requirements," OSWER 9234.1-02, 1989 WL 515956 (Aug. 1989).  It establishes a different type of mixed waste, based upon type of radioactive material, "source, special nuclear, or byproduct material" governed by the Nuclear Regulatory Commission under the Atomic Energy Act and other radioactive waste that is governed by the EPA under RCRA.  Where those types of radioactive materials are mixed, under the Guidance, both agencies regulate.

As a result, the EPA interprets the definitions in RCRA for hazardous waste and solid waste and the radioactive materials to extend RCRA's jurisdiction to the mixture of

low-level radioactive waste and high-level radioactive waste.  Plaintiffs have alleged exposure to mixed radioactive materials, some high-level, such as uranium and thorium, the rest low-level radioactive materials.  Although there is overlapping jurisdiction with mixed radioactive materials between the Nuclear Regulatory Commission and the EPA, this applies to storage and remediation of the material.  Absent amendment of the relevant statutes, cf. EPA Guidelines, RCRA also covers these properties.

The EPA Guidance for low-level radioactive waste has RCRA jurisdiction jointly with Atomic Energy Act.  Defendants view requires distinct deposits based upon the radioactive substance, with RCRA jurisdiction only for the radioactive materials other than those containing uranium or thorium.  That level of precision has not been alleged for any of Plaintiffs' properties, save for deposits from Union Carbide (cf. Docket No. 26, Am. Compl. ¶¶ 37, 50, 58).  This Court accepts the EPA Guidance and finds that mixed low-level radioactive materials are allegedly involved here, and Plaintiffs thus allege a RCRA claim for the type of waste deposited.

As such, Defendants' Motion to Dismiss (Docket No. 29) on Plaintiffs' stating a claim under RCRA based upon the RCRA definitions involving radioactive waste is denied.

Defendants also point out that the EPA investigated and has addressed remediation.  The parties Sur-Reply and responding papers argue the effect of the EPA's actions in 2018 and the admissibility of declaratory correspondence (compare Docket No. 48, Pls. Atty. Decl. with Docket No. 49, Defs. Reply to Decl. of Pls' Counsel), which this Court granted Defendants leave to file this correspondence in support of their Motion to Dismiss (Docket Nos. 45, 56).  After filing this action, the EPA resumed its investigation

and, in September 2018 the EPA stated that it would resume remediation (Docket No. 29, Defs. Memo. at 25; Docket No. 44, Defs. Motion to Supplement, Def. Occidental Atty. Decl. ¶¶ 4-10, Exs. A, B; Docket No. 55, Defs. [Second] Motion to Supplement, Occidental Atty. Decl. ¶¶ 9-11, Exs. A, B; see also Docket No. 49, Defs. Reply Memo. at 2).   If defense argument is correct about RCRA jurisdiction with mixed radioactive material, the EPA would have declined remediation, deferring to the Nuclear Regulatory Commission or other agencies to conduct further investigation or remediation.   As such, the EPA's action confirms that RCRA has concurrent jurisdiction over mixed radioactive waste present here.

### 2.  Endangerment and Disposal of Waste

#### a.  Discarding or Recycling

Defendants next argue that the Amended Complaint fails to allege the radioactive waste was discarded or that the materials deposited posed imminent and substantial endangerment to health or the environment (Docket No. 29, Defs. Memo. at 30, 3, 26). Defendants contend that use of radioactive material as fill material was not "discarding it" but was reusing it (id. at 30), see No Spray Coal, Inc. v. City of N.Y., 252 F.3d 148, 150 (2d Cir. 2001) (per curiam) (holding pesticide sprayed into the air is serving its intended purpose and is not discarded under RCRA).   Plaintiffs respond relying upon the EPA's consent order in Idaho where the defendants similarly used radioactive material as construction fill (Docket No. 34, Pls. Memo. at 32).   Defendants reply that that consent decree made no finding that the waste there was discarded (Docket No. 36, Defs. Reply Memo. at 13).

Plaintiffs then cited Owen Electric Steel Co. of South Carolina v. Browner, 37 F.3d 146, 150 (4th Cir. 1994), that the slag there that was recycled for construction use, but not in the same industry as the generator, the Fourth Circuit held that the slag was discarded RCRA solid waste (Docket No. 34, Pls. Memo. at 32), see Chart v. Town of Parma, No. 10CV6179, 2014 WL 4923166, at *34 (W.D.N.Y. Sept. 30, 2014) (Payson, Mag. J.).

Magistrate Judge Marian Payson in Chart found a substance used in the same industry or a separate industry was "relevant, although not determinative, to the question of whether the material constitutes a solid waste under RCRA," 2014 WL 4923166, at *34.

Defendants dispute the circuit decisions underlying Owen Electric, contending that the D.C. Circuit later held that recycling in another industry did not make that item 'discarded (Docket No. 36, Defs. Reply Memo. at 13, citing Safe Food & Fertilizer v. E.P.A., 350 F.3d 1263, 1268 (D.C. Cir. 2003), clarifying American Mining Cong. v. E.P.A., 824 F.2d 1177, 1186 (D.C. Cir. 1987) ("AMC I"), cited in Owen Elec., supra, 37 F.3d at 150.

In Safe Food & Fertilizer, the D.C. Circuit construed its precedent on the question whether recycling a material is also discarding it under RCRA where that Circuit's cases depended upon whether the recycling was within or outside of the generating industry, 350 F.3d at 1268.  Recycling within an industry was not deemed discarding solid waste, id., citing American Mining Cong., supra, 824 F.2d at 1186, while recycling for use in another industry may be deemed discarding, Safe Food & Fertilizer, supra, 350 F.3d at 1268, citing American Petroleum Inst. v. E.P.A. 906 F.2d 729, 740-41 (D.C. Cir. 1990);

American Mining Cong. v. E.P.A. ("AMC II"), 907 F.2d 1179, 1186-87 (D.C. Cir. 1990).

The Safe Food & Fertilizer court then stated

> "But we have never said that RCRA compels the conclusion that material destined for recycling in another industry is necessarily 'discarded.' Although ordinary language seems inconsistent with treating immediate reuse within an industry's ongoing industrial process as a 'discard,' see AMC I, 824 F.2d at 1185, the converse is not true.  As firms have ample reasons to avoid complete vertical integration, see generally Ronald Coase, "The Nature of the Firm," 4 Economica 386 (1937), firm-to-firm transfers are hardly good indicia of a 'discard' as the term is ordinarily understood,"

350 F.3d at 1268.  The court then accepted the EPA's construction of RCRA § 6903(27) that the list of types of solid waste becomes so only when it is "discarded," Safe Food & Fertilizer, supra, 350 F.3d at 1268-69.

Thus, RCRA solid waste needs to be discarded for that statute to apply and the recycling of material (even outside of the material generator's industry) is not discarding that material.  This case provides a classic example of recycling outside of the industries of Defendants, manufacturers of chemicals and radioactive substances.  Plaintiffs allege that Defendants took their radioactive slag and recycled it by installing it as bedding for asphalt on their properties.  Such reuse is not part "of the waste disposal problem," Am. Petroleum Inst., supra, 906 F.2d at 740-41; AMC II, supra, 907 F.2d at 1106-87, that RCRA addresses.

Defendants' disposal of slag material recycled as asphalt base is not discarding of solid waste under RCRA.  Therefore, Defendants' Motion to Dismiss (Docket No. 29) on this categorical basis is granted.  To fully develop the record, this Court next considers other parts of the definitions of solid waste and hazardous waste, that the slag presents imminent and substantial endangerment to human health and the environment.

b.  Imminent Harm

As for the imminent nature of the waste on Plaintiffs' properties, this issue joins with the timeliness of Plaintiffs' claims (be it statute of limitations or laches).   The Amended Complaint alleges that the environmental conditions at some of Plaintiffs' properties was found to have gamma radiation presented or may present "an imminent and substantial endangerment to human health or the environment" (Docket No. 26, Am. Compl. ¶ 43; see id. ¶ 76).  Plaintiffs also rely upon the EPA's conclusion that radioactive waste at the Niagara Falls Boulevard properties may present imminent and substantial endangerment to public health, welfare, or the environment (id. ¶ 44) to contend that their other properties' waste also posed the same imminent and substantial endangerment (id. ¶ 45).

The Amended Complaint alleges "elevated levels of radiation" on Plaintiffs' properties (Docket No. 26, Am. Compl. ¶¶ 38, 42-46).  Plaintiffs generally claim exposure to this radioactive material exposed them (and their visitors or occupants) to doses of radiation that increased the risk for adverse health effects that minimally warrant monitoring.  Plaintiffs, however, have not alleged specifics for the impact of these elevated levels, such as medical injury claims, depreciation in property values once radioactive materials were disclosed.   Plaintiffs fail to state that this exposure is substantial endangerment, especially given the variety of elements disposed of on their grounds.

3.  Relief Alleged

Plaintiffs deny seeking compensatory damages (Docket No. 34, Pls. Atty. Decl. ¶ 22) or apparently other damages (Docket No. 34, Pls. Memo. at 40).  In Meghrig, supra, 516 U.S. at 484, the Supreme Court held that 42 U.S.C. § 6972(a)(1)(B) does not

authorize a private right of action to recover costs for clean up toxic waste that "does not, at the time of suit, continue to pose an endangerment to health or the environment," Ergon, supra, 966 F. Supp. at 581.   Thus, Plaintiffs cannot recover past or future expenses from Defendants, either compensatory or punitive.   Plaintiffs as citizen suit litigants are private Attorneys General, advocating for the interest of the United States. Plaintiffs accept this (Docket No. 34, Pls. Atty. Decl. ¶ 22).   Therefore, Plaintiffs only state claims for injunctive relief and recovery of their attorneys' fees.

4.  Results

RCRA governs the disposal of mixed low-level and high-level radioactive waste (jointly with the Atomic Energy Act) as Plaintiffs allege were the slag deposited in this case.   The recycling of radioactive slag on Plaintiffs' properties, however, is not "discard" of solid waste in violation of RCRA.   Even if Plaintiffs alleged imminent and substantial endangerment from that disposal or seek only injunctive relief, Plaintiffs' claims fail because Defendants did not discard solid waste under 42 U.S.C. § 6903(27).   Thus, Defendants' Motion to Dismiss the First Cause of Action (Docket No. 29) is granted.

D.  Sufficiency of Pleadings

Plaintiffs allege that each Defendant (or its corporate predecessor) created and deposited radioactive waste (Docket No. 26, Am. Compl. ¶¶ 50-55).   Union Carbide allegedly deposited radioactive waste (uranium, thorium, and other elements) in Niagara Falls Boulevard Properties and in the Holy Trinity Cemetery in Lewiston, near the Robert Street Properties, the Upper Mountain Road Properties, and Palmeri Property (id. ¶¶ 51, 27-32 ("Niagara Falls Boulevard Properties" and their owners), 10-13 ("Upper Mountain Road Driveway Properties" and their owners), 14 (Palmeri Property, on Upper Mountain

27

Road), 17-20 ("Robert Street Properties," and their owners)).   They next allege that Occidental generated radioactive slag (from elemental phosphorus) that was deposition "in the Niagara Falls area, including several of the Plaintiff Properties" with phosphate slag wastes (id. ¶¶ 52, 53).   Bayer's predecessor, Stauffer, allegedly generated and disposed of radioactive wastes (niobium, tantalum, zirconium, and other rare earth metals) at its Lewiston plant, affecting the Robert Street Properties, Upper Mountain Road Driveway Properties, and the Palmeri Property (id. ¶¶ 54, 55, 17-20, 10-13, 14).  Plaintiffs specify each Defendant's (or its predecessor's) role in depositing radioactive slag at certain properties owned by Plaintiffs (id. ¶¶ 51, 27-32, 10-13, 14, 17-20, 52, 53, 54, 55).

Plaintiffs were more specific as to which Defendant deposited in Lewiston or on the Niagara Falls Boulevard Properties than other sites in Niagara Falls or on Grand Island, analogizing the harm and imminent danger faced at other properties.  Given the holding above that Plaintiffs failed to assert a RCRA First Cause of Action, this Court need not determine whether Plaintiffs otherwise sufficiently alleged their RCRA claim against each Defendant.

E.  Statute of Limitations

As for the limitations period under RCRA, the act itself does not contain a statute of limitations, Meghrig, supra, 516 U.S. at 486 (contrasting with CERCLA and its statute of limitations, 42 U.S.C. § 9613(g)(2)), or expressly refer to the otherwise default federal limitations period of 28 U.S.C. § 2462.  Section 2462 provides the limitations period for civil penalties, not sought by Plaintiffs here (see Docket No. 34, Pls. Memo. at 14).

Federal courts differ whether the five-year, e.g., Bodne v. Geo. A. Rheman Co., Inc., 811 F. Supp. 218, 221 (D. S.C. 1993) (citing Sierra Club v Chevron U.S.A., Inc.,

834 F.2d 1517, 1521 (9th Cir. 1987) (citing cases, for Clean Water Act statute of limitations) or six-year, see Catullus Dev. Corp. v. L.D. McFarland Co., 910 F. Supp. 1509, 1514-15 (D. Or. 1995) (period for remediation action in CERCLA action), limitation period applies to RCRA citizen suits or if no limitations period applies at all.  Some courts, recognizing either the injunctive nature of available relief to citizen litigants or that any financial penalty is payable to the United States, held no statute of limitations applies, compare Glazer, supra, 894 F. Supp. at 1044 with A-C Reorganization, supra, 968 F. Supp. at 427 (no recovery for past cleanups and citizen suit requires allegation of imminent harm to obviate need for limitations period); Ergon, supra, 966 F. Supp. at 581. The court in Ergon read the "imminent harm" in the statute for a citizen suit to require an immediate threat, hence deeming a statute of limitations period to be unnecessary, Ergon, supra, 996 F. Supp. at 518 (citing Meghrig, supra, 516 U.S. 479, 485-86).

The Meghrig Court focused on the harm RCRA citizen suits were to address, that is imminent and substantial endangerment to health or environment.  The Court defined "imminent" as "threaten[s] to occur immediately," id. at 485, quoting Webster's New International Dictionary of English Language 1245 (2d ed. 1934).  Given the immediacy required for a RCRA citizen suit, this Court holds that there is no applicable statute of limitations (including the default 28 U.S.C. § 2462) for citizen suits.  If litigants fail to commence an action immediately to address imminent harm to health or the environment, those claims fail to state a claim.

As for the injunctive relief, Plaintiffs' claims need to arise from imminent harm, obviating the need for a limitations period.  Plaintiffs allege imminence only from the EPA and other agencies declarations that the harm at Niagara Falls Boulevard properties may

be imminent, with Plaintiffs extrapolating that conclusion to their other properties (cf. Docket No. 26, Am. Compl. ¶¶ 44-45, 76).  If Plaintiffs allege (as they do in this case) decades-old harm only legally addressed in 2017 (by Plaintiffs serving notices upon the EPA that year, id. ¶¶ 77, 78), these claims fail to state a RCRA claim for imminent harm and are dismissed on that basis.  Plaintiffs do not allege when the EPA found the Niagara Falls Boulevard properties were in imminent danger (to use this event as a date of discovery) for comparison when Plaintiffs commenced this action.  RCRA furnishes equitable relief; citizen litigants need to diligently pursue these claims rather than let their toxic properties fester.

Under Meghrig, Plaintiffs do not have a right to recover compensatory or punitive damages or recover from future costs of long-term medical monitoring, 516 U.S. at 484. Relief under RCRA is equitable, restraining defendants or ordering remediation or "such other action as may be necessary, or both," 42 U.S.C. § 6972(a)(1)(B); Meghrig, supra, 516 U.S. at 484.  Plaintiffs now deny seeking compensatory damages (Docket No. 34, Pls. Atty. Decl. ¶ 22) or apparently other damages (Docket No. 34, Pls. Memo. at 40). Therefore, RCRA has no statute of limitations applicable here.

Even if the five-year limitations period of § 2462 were applicable, Plaintiffs fail to allege an event (or series of events) that accrued their claims.  They allege detection of radiation in the 1970s and 1980s (Docket No. 26, Am. Compl. ¶ 38), well beyond five years before filing this action in 2017.

F.  Other Defense Grounds

Defendants raise other grounds for dismissal of this action (constitutional standing, subject matter jurisdiction, laches, sufficiency of Amended Complaint, primary

jurisdiction).  Given the decisions above as to the Amended Complaint stating a claim and statute of limitations, this Court need not address Defendants' other contentions.

If this Court considers these defenses, laches is not appropriately raised in a Motion to Dismiss.  The delay inherent in laches has to arise from a known event (here, the discovery of the radioactive disposal) to establish each Plaintiffs' awareness of their claims and measure of the delay in acting to conclude whether it was inexcusably long, cf. Williams, supra, 2017 WL 4221084, at *12 (Docket No. 36, Defs. Reply Memo. at 8-9).

As for primary jurisdiction, Plaintiffs filed this action prior to EPA activity on their properties.  During pendency of this action, the EPA declared it would begin investigation and remediation.  While two primary jurisdiction factors here favor deferring to the EPA due to its agency expertise and discretion, there is no prior application to the agency or risk of inconsistent rulings and, since the EPA resumed its activities after filing this case, there is no substantial danger of inconsistent rulings from this case.  If this Court were to retain jurisdiction, there would be no need to abstain to avoid exercising primary jurisdiction.

G.  Supplemental Jurisdiction over State Claims

With dismissal of Plaintiffs' RCRA claims, this Court need not exercise supplemental jurisdiction of the remaining state common law claims.  All claims arise from the same operative facts of the disposal of slag alleged in the RCRA.

## IV.   Conclusion

RCRA does not apply to the recycled radioactive material dispensed on Plaintiffs' properties.  This is not because that material contained some high-level radioactive waste

(governed by the Atomic Energy Act) but because reuse of that material was not "discarding" solid waste under RCRA.

Therefore Plaintiffs' First Cause of Action fails to state a claim.  This Court then declines to exercise supplemental jurisdiction over Plaintiffs' remaining common law Cause of Actions.  Defendants' Motion to Dismiss (Docket No. 29) is granted.

## V.    Orders

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 29) is GRANTED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:       April 26, 2021
             Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge