UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Talarico Bros. Building Corp.; Joseph Lozina, Sr.
and Joseph Lozina, Jr.; John Grace; Philip Palmeri;
Mark and Theresa Schuler; Constantino and Christine
Argona; John Raymond; Harold Wade; Walter and
Barbara Michaels; Robert Ward and Betty Moticka;
The Wheelhouse, Inc., and Thomas and Deborah
Harrison; Gary Ebersole; Dietrick Brothers, Inc.; Paul
and Diane Ziuko; 8001 Buffalo Ave., Inc.; 9524
Niagara Falls Boulevard, LLC; Bowlen Enterprises,
Ltd.; 9540 NFB, LLC; Greater Niagara Building
Center Inc.; and Joseph C. Weber, Inc.,

                              Plaintiffs,

                                                              Civil No. 1:17-cv-01041-WMS

v.


Union Carbide Corporation; Occidental
Chemical Corporation; and Bayer Cropscience Inc.,

                              Defendants.

_____


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SECOND MOTIONS TO DISMISS THE AMENDED COMPLAINT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION PURSUANT TO FRCP 6(b)(1)(B)**

HARTER SECREST & EMERY LLP

John G. Horn, Esq.
Daniel J. Altieri, Esq.
Paul D. Sylvestri, Esq.
Thomas M. Tuori, Esq.
*Co-Attorneys for Plaintiffs*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
716-853-1616

THE STAMM LAW FIRM

Brian G. Stamm, Esq.
Bradley J. Stamm, Esq.
*Co-attorneys for Plaintiffs*
1127 Wehrle Drive, Suite 10
Williamsville, New York 14221
716-259-1626

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................3

     I.     The Second Circuit's vacatur of this Court's dismissal revived the Amended Complaint in its entirety, and that is the law of the case. ...........................3

     II.    Defendants' arguments relating to Plaintiffs' non-RCRA, state-law claims are procedurally improper and should be rejected for the same reasons Plaintiffs articulated five years ago. ..................................................9

     III.    Alternatively, the Court should either grant Plaintiffs' cross-motion to extend the deadline to seek leave to file a new pleading or dismiss the Amended Complaint without prejudice to Plaintiffs' filing a new pleading. ........................................................................................................12

CONCLUSION ................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Dettelis v. Sharbaugh*,
   919 F.3d 161 (2d Cir. 2019)..................................................................................................4

*Pratts v. Coombe*,
   59 F. App'x 392 (2d Cir. 2003) ...........................................................................................3

*Williams v. N.Y.C. Hous. Auth.*,
   816 F. App'x 532 (2d Cir. 2020) ..........................................................................................9

**STATUTES**

42 U.S.C. § 6972(a)(1)(b) .........................................................................................................1

C.P.L.R. 214(4)........................................................................................................................10

C.P.L.R. 214(5)........................................................................................................................10

C.P.L.R. 214-c(2).....................................................................................................................10

F.R.C.P. 6(b)(1)(B) ..............................................................................................................2, 13

F.R.C.P. 12(b)(6) ......................................................................................................................3

F.R.C.P. 15(d) ...........................................................................................................................3

**PRELIMINARY STATEMENT**

In their Amended Complaint, dated January 2, 2018 ("Am. Cmplt.," ECF Dkt. No. 26),

Plaintiffs allege that, for most of the twentieth century, Defendants conducted industrial

operations in and around Niagara County, New York, which generated large volumes of

radioactive solid waste, including radioactive "slag," a fragmented rock-like aggregate material

that was used as fill or as an aggregate substitute at residential and commercial properties

throughout the area. (*See, e.g.,* Am. Cmplt., ¶¶ 1, 3.) Plaintiffs also allege that Defendants

generated the radioactive solid wastes that were disposed of on their properties, resulting in

conditions that "may present an imminent and substantial endangerment to health or the

environment" (*see, e.g., id.*, ¶¶ 71, 76), as required in a citizen suit under the federal Resource

Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(b). In addition to their

RCRA claim, Plaintiffs also brought a number of state law tort claims related to Defendants'

same acts.

Following this Court's dismissal of the Amended Complaint by Decision and Order dated

April 26, 2021 ["Decision and Order," ECF Dkt. No. 61], Plaintiffs appealed to the United States

Court of Appeals for the Second Circuit. In its Decision dated July 13, 2023, the Second Circuit

affirmed the part of this Court's Judgment that dismissed the Amended Complaint as against

Defendant Bayer Cropscience Inc. ("Bayer") and, as is relevant for instant purposes, vacated the

remainder. *See* Second Circuit Decision ("Decision"), attached as **Exhibit A** to the Declaration

of John G. Horn, dated October 10, 2023 ("Horn Declaration") at 28.

Instead of answering the remanded Amended Complaint, the remaining Defendants,

Union Carbide Corporation ("Union Carbide") and Occidental Chemical Corporation

("Occidental"), moved a second time to dismiss the Amended Complaint on the theory that the

Second Circuit had determined as a matter of law that Plaintiffs failed sufficiently to plead substantial endangerment caused by the radioactive solid waste Defendants disposed of on their properties. As explained below, the Second Circuit did no such thing. Furthermore, while Defendants are correct that the Second Circuit's Decision constitutes "law of the case," what they misapprehend utterly is that the application of that doctrine cuts entirely against *them* because the Second Circuit's vacatur leaves the nearly six-year-old Amended Complaint intact for all purposes except as concerns Bayer.

It is indisputable that the Second Circuit did not affirm this Court's dismissal of Plaintiffs' claims against Occidental and Union Carbide. Neither did it remand to the District Court with instructions to dismiss without prejudice to the filing of a new pleading. Rather, it vacated this Court's dismissal in its entirety except as applied to Bayer, thereby reviving Plaintiff's claims against Occidental and Union Carbide—as a matter of law. As a result, the Amended Complaint is the operative pleading in this case, and it is now incumbent on Union Carbide and Occidental to answer it and defend themselves against Plaintiffs' amply pled allegations. For this reason, the Court should deny Occidental's and Union Carbide's second set of motions to dismiss in their entirety.

Alternatively, even though the language and effect of the Second Circuit's decretal paragraph and Mandate are unambiguous in Plaintiffs' view, if this Court determines that, notwithstanding the particularized allegations in the Amended Complaint regarding the danger posed by the presence of Union Carbide's and Occidental's radioactive solid waste on Plaintiffs' properties, Plaintiffs' pleading should say more in that regard, then Plaintiffs respectfully request that the Court either (a) extend the deadline for Plaintiffs to seek leave to file a new pleading pursuant to FRCP 6(b)(1)(B) and permit Plaintiffs the opportunity to file a Supplemental

Complaint pursuant to FRCP 15(d) to set out the myriad relevant events that have transpired on

and around Plaintiffs' properties since they commenced this action six years ago, or (b) dismiss

the Amended Complaint without prejudice to Plaintiffs' filing of a new pleading.

<strong>ARGUMENT</strong>

**I.      The Second Circuit's vacatur of this Court's dismissal revived the Amended Complaint in its entirety, and that is the law of the case.**

Union Carbide argues in support of its renewed motion to dismiss that "[t]his Court

dismissed plaintiffs' RCRA claim for a failure to adequately plead substantial endangerment,

among other reasons."[1] (Union Carbide Memorandum of Law in Support of Motion to Dismiss

[ECF Dkt. No. 76-1], at 2.) That is a demonstrably false statement. This Court granted

Defendants' FRCP 12(b)(6) motion and dismissed the Amended Complaint on the grounds that

"RCRA does not apply to the recycled radioactive material dispensed on Plaintiffs' properties …

because reuse of that material was not 'discarding' solid waste under RCRA." Decision and

Order at 31-32.

According to the Second Circuit, "[t]hat conclusion was premature, even assuming all the

radioactive solid waste at issue was recycled as construction material." (Second Circuit Decision

at 16.) Whatever else this Court or the Second Circuit wrote about the sufficiency of the

pleadings, it is inarguable that this Court did not dismiss Plaintiffs' RCRA claim "for a failure to

adequately plead substantial endangerment." It is equally indisputable that the Second Circuit did

not affirm the dismissal for that reason or in any other regard except as applied to Bayer.

It is well established that the Second Circuit could have affirmed dismissal, with or

without prejudice, on any ground it so chose. *See, e.g., Pratts v. Coombe*, 59 F. App'x 392, 394-

95 (2d Cir. 2003) ("Because Pratts has alluded on appeal to the existence of facts that may flesh

---

[1] Occidental filed a separate motion to dismiss but both echoed and joined in Union Carbide's arguments.

3

out his allegations … we believe he should be given an opportunity to replead his allegations

before his complaint is dismissed with prejudice. Accordingly, we remand to the District Court

with instructions to dismiss without prejudice to the filing of a second amended complaint,

within a specified time period of the court's choosing."); *see also Dettelis v. Sharbaugh*, 919

F.3d 161, 163 (2d Cir. 2019) (observing that the Circuit Court reviews the District Court's

dismissal of a complaint de novo, and "may affirm on any ground that finds support in the

record"). Indeed, the Second Circuit did just that with respect to the claims against Bayer, which

this Court deferred ruling on in light of its determination on the disposal element under RCRA.

(*See* Decision at 25 ("We conclude that the Complaint sets forth just enough individualized facts

to plausibly demonstrate contribution by Union Carbide and Occidental, but not by Bayer.")

Given the Second Circuit's careful review of the record and decision to affirm dismissal of Bayer

on grounds other than those relied upon by this Court, it is all the more notable that the appellate

court did not affirm dismissal of the Amended Complaint against Union Carbide and Occidental

on any grounds whatsoever.

Apart from the plain language of the Decision itself, Plaintiffs' interpretation of the

Second Circuit's Decision as having vacated the dismissal in its entirety as against Union

Carbide and Occidental, and restored the Amended Complaint for all purposes, is supported by

the fact that Defendants made, and the Second Circuit rejected, a similar "you actually agreed

with us on substantial endangerment" argument in opposition to Plaintiffs' post-Decision

application for costs. Following the issuance of the Second Circuit Decision in favor of

Plaintiffs, Defendants objected to Plaintiffs' application for costs, arguing to the Second Circuit,

just as they have now in support of their renewed motion to dismiss, that "[t]his Court concluded

that allegations in Appellants' complaint were 'plainly insufficient to demonstrate that a serious

4

risk of harm persists today' as required by RCRA." Defendants' Opposition to Taxation of Costs, dated August 9, 2023, attached to the Horn Declaration as **Exhibit B**, at 1. "In short," Defendants continued, "this Court agreed with Appellees that the complaint failed to state a claim," and therefore "Appellees should not be charged with Appellants' costs." *Id.* at 2. The Second Circuit rejected Defendants' attempt to put words in its mouth and, on September 20, 2023, awarded costs in favor of Plaintiffs. *See* Taxation of Costs, attached to the Horn Declaration as **Exhibit C**.

Further supporting Plaintiffs' interpretation of the scope and effect of the Second Circuit's decision is the Court's acknowledgment that the United States Environmental Protection Agency ("EPA") not only has determined that the radioactive solid waste on Plaintiffs' properties presents a substantial danger, but also has spent significant taxpayer dollars to remove radioactive solid waste at some of the Plaintiff properties since Plaintiffs commenced this lawsuit in 2017.[2] While the Second Circuit certainly suggested that explicit reference to, and perhaps excerpting from, the EPA's August 15, 2016 Action Memo (originally filed in opposition to Defendants' first motion to dismiss at ECF Dkt. No. 34-7) would strengthen Plaintiffs' pleading, the EPA's self-titled "Endangerment Determination" therein—that "Actual or threatened releases of hazardous substances from the [Niagara Falls Boulevard] Site, if not addressed by implementing the response action selection in this Action Memorandum, may present an imminent and substantial endangerment to public health, welfare, or the environment" *(id.* at 11)—is clearly referenced in pertinent part at paragraph 44 of the Amended Complaint.

---

[2] This Court made a similar finding in its Decision and Order when considering Defendants' primary jurisdiction argument: "Plaintiffs filed this action prior to EPA activity on their properties. During pendency of this action, the EPA declared it would begin investigation and remediation. While two primary jurisdiction factors here favor deferring to the EPA due to its agency expertise and discretion, there is no prior application to the agency or risk of inconsistent rulings and, since the EPA resumed its activities after filing this case, there is no substantial danger of inconsistent rulings from this case. If this Court were to retain jurisdiction, there would be no need to abstain to avoid exercising primary jurisdiction." (*Id.* at 31. (Emphasis supplied.))

5

For its part, the Second Circuit recognized as much at pages 22 and 23 of its Decision, where it noted that Plaintiffs had amply alleged that "[m]ore recent EPA evaluations found that elevated levels of radiation persist around the Niagara Falls Boulevard and Robert Street properties, and the agency determined that the radioactive solid waste at those sites may present an imminent and substantial endangerment." (*Cf.* Am. Cmplt., ¶ 44 ("The USEPA has already formally determined that the radioactive solid waste at the Niagara Falls Boulevard Properties 'may present an imminent and substantial endangerment to public health, welfare, or the environment.' Upon information and belief, the USEPA has informally made that same determination with respect to the radioactive solid wastes at the Robert Street Properties ….").).)

Significant, too, is that the Second Circuit took judicial notice of the EPA's resumption of removal actions at certain Plaintiff properties and initiation of removal actions at others, all since Plaintiffs brought suit in 2017. *See id.* at 11 (noting that "the EPA has published yet more recent updates indicating that the agency completed most if not all of its work in the Niagara Falls and Lewiston, New York region by the spring of 2021.") These, of course, are the very same post-endangerment-determination removal actions that Plaintiffs alleged in the Amended Complaint the EPA had begun and abandoned prior to commencement of this lawsuit. (*Cf.* Am. Cmplt., ¶ 42 ("Recent radiological evaluations by the United States Environmental Protection Agency ('USEPA') have identified elevated levels of radiation at the Upper Mountain Road Driveway Properties, the Robert Street Properties, and the Niagara Falls Boulevard Properties.)) They also are the removal actions this Court found the EPA had expressed its intention to resume in September 2018. *See* Decision and Order at 23.

From the foregoing discussion by the Second Circuit, it is clear that, whatever misgivings the Court may have had about the explicitness of Plaintiffs' allegations, the Amended Complaint

puts every reasonable reader on notice that the EPA determined prior to commencement of this

action that the radioactive solid waste at the Niagara Falls Boulevard property—which Plaintiffs

allege Defendants generated and disposed of (*see* Am. Cmplt., ¶¶ 48-61)—may pose an

imminent and substantial danger to human health, welfare, and the environment and that the

radioactive solid wastes at the other Plaintiff properties are similar and thus also pose an

imminent and substantial danger to human health, welfare, and the environment. Perhaps most

telling in this regard is that the Second Circuit actually saw fit to take judicial notice of the

EPA's Community Updates on renewed removal activities at the Niagara Falls Boulevard

properties and new removal actions at certain other Plaintiff properties. *See* Decision and Order

at FN 2. Critically given Defendants' erroneous contention on remand, the second of the two

documents of which the Second Circuit took judicial notice answers dispositively the question

whether the radioactive solid waste on Plaintiffs' properties is dangerous: "Though the site [i.e.,

the Niagara Falls Boulevard property] did not qualify for listing on EPA's National Priorities

List, EPA determined that the radioactivity did present a significant health risk making the site

eligible for a response action under EPA's Superfund removal program." (Emphasis supplied.)

What the Second Circuit could not have known when it issued its Decision in July is that

the EPA would soon agree to join forces with the New York State Department of Environmental

Conservation ("DEC") to conduct an aerial radiological survey of the entirety of Erie and

Niagara Counties. According to the DEC release, the survey is being conducted—

contemporaneous with the briefing of this motion, no less—"out of an abundance of caution to

provide the most current and scientific information to complement a similar aerial radiological

survey of the region that was previously conducted in 1984 that assessed the extent of potential

use and distribution of biproducts and waste materials containing radiological material." *See*

DEC Release, titled "DEC and EPA Announce Oct. 2 Start of Aircraft-Based Survey of Erie and

Niagara Counties," dated September 29, 2023, and attached to the Horn Declaration as **Exhibit**

**D**. The 1984 survey being supplemented is the one that gave rise to the Oak Ridge Report, which

figures prominently in the Amended Complaint and was acknowledged by both this Court and

the Second Circuit (*See* Am. Cmplt., ¶¶ 38, 39, 53; Decision and Order at 13; and Decision at 5,

20, and 23). Whether for purposes of denying Defendants' second set of motions to dismiss or

granting Plaintiffs' cross-motion, Plaintiffs respectfully request that the Court join the Second

Circuit in taking judicial notice of the numerous critically important developments in the region

generally and at certain Plaintiff properties in particular since this case was commenced in

October 2017 because, while Defendants have gone to great lengths to wish it away, the

indisputable fact is that the EPA would not be working with the DEC to identify what could

ultimately be hundreds of additional impacted sites via the pending area-wide aerial survey or

spend millions of taxpayer dollars remediating properties contaminated with radioactive solid

waste unless that waste presents, or at very least *may* present (with "may present" being the

statutory RCRA threshold regarding the probability of endangerment and also the statutory

CERCLA threshold for removal actions, such as those resumed by EPA at certain Plaintiff

properties), a substantial and imminent danger to human health and the environment.

That this Court understood fully what the Second Circuit did—and did *not* do—is

reflected in the Court's August 10, 2023 Scheduling Order, which granted Plaintiffs an

opportunity to seek leave to amend should they so elect and directed Defendants to answer or

otherwise respond to the Amended Complaint should Plaintiffs not seek leave to amend. (*See*

Text Order, dated August 8, 2023, ECF Dkt. No. 67.) Given this language, which is wholly

consistent with the law of the case being a full-scale restoration of the Amended Complaint,

Plaintiffs elected not to seek leave to amend, with the hope and expectation that Defendants would file an answer and this case would finally slip free of its nearly six-year pleading logjam. This Court obviously would not (and obviously could not) have given Defendants the option to answer the Amended Complaint if the Second Circuit, as Defendants now urge the Court to conclude, had already ruled that Plaintiffs' claims were in any way deficiently pled.

**II.**      **Defendants' arguments relating to Plaintiffs' state law tort claims are procedurally improper but, if considered, should be rejected for the same reasons Plaintiffs articulated five years ago.**

As part of their second motions to dismiss, Defendants do little more than recycle the arguments against Plaintiffs' state law claims they made in their first motion to dismiss. Despite its being well settled that an appellate court "may affirm for any reason supported by the record," *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 535 (2d Cir. 2020), Defendants deliberately chose not to argue to the Second Circuit that the Court should order dismissal of Plaintiffs' state law claims regardless of what it determined on the RCRA claim. Accordingly, Defendants should not now be permitted to reassert identical arguments in an inefficient attempt to achieve a second bite at the same apple.

To the extent the Court considers Defendants' arguments made—virtually verbatim—for a second time, the Court should reject them as meritless for the very same reasons Plaintiffs offered five years ago. For purposes of judicial efficiency and economy, Plaintiffs expressly incorporate their arguments against Defendants' positions, as set forth in Plaintiffs' 2018 opposition to Defendants' first motion to dismiss (*see* Plaintiffs' Memorandum of Law in Support of their Opposition to the Defendants' Joint Motion to Dismiss ("Plaintiffs' Opp. MOL"), ECF Dkt. No. 34], attached as **Exhibit E** to the Horn Declaration, at 11-14 and 40-49), and will address here only that portion of the Occidental motion which seeks to expand on the earlier timeliness argument by offering the Court 13 newspaper articles, purportedly to establish

9

that Plaintiffs had notice of the injuries caused by Defendants' radioactive solid waste 40 years

ago.

Preliminarily, as the Court noted in its Decision and Order, "[f]or Plaintiffs' state

common law claims, the New York CPLR sets a statute of limitations of three years, N.Y. CPLR

214(4), (5), from the date of discovery of the injury or the date, through the exercise of

reasonable diligence such injury should have been discovered by plaintiff, CPLR 214-c(2)."

Decision and Order at 10. Plaintiffs pointed out five years ago and repeat here that, despite

references to decades-old government reports and decades-long government inaction, nothing in

the Amended Complaint even remotely suggests that any Plaintiff discovered or was informed

by a government agency that there was radioactive slag on her property at a time that would

serve to bar the advancement of a claim, nor, as a separate but equally important issue, is there

anything in the Amended Complaint establishing that a particular Plaintiff's injuries are "latent"

as opposed to "patent."[3] (Plaintiffs' Opp. MOL at 13-15.)

Also instructive in this regard is that the Court, albeit in its discussion of laches,

determined in the Decision and Order that *when* a Plaintiff discovered, or should have

discovered, the injury complained of is a fact-intensive inquiry "not appropriately raised in a

motion to dismiss." "The delay inherent in laches has to arise from a known event (here, the

discovery of the radioactive disposal) to establish each Plaintiffs' awareness of their claims and

measure of the delay in acting to conclude whether it was inexcusably long." (*Id.* at 31. (Internal

citations omitted, emphasis supplied.)) That same reasoning applies with equal force here and

---

[3] To the extent that Defendants argue that the continuing tort doctrine can never apply in cases involving
environmental harm, they are clearly wrong. As even Defendants' own cases demonstrate, although N.Y.C.P.L.R.
§ 214-c supplanted the continuing tort doctrine, it did so only with respect to claims based upon latent injuries, not
patent ones (or claims based upon equitable relief). Clearly, whether a particular Plaintiff's injuries are "patent" or
"latent" is a question riddled with issues of fact that are not suitable for resolution on a motion to dismiss. Because

forecloses Defendants' timeliness argument, particularly where Defendants, who have the burden

of proof on this affirmative defense, have introduced no evidence as to when any particular

Plaintiff learned of her injury or purchased her property.

Notably, no Plaintiff or Plaintiff property is identified in any of the 13 articles cited by

Defendants except for the Niagara Falls Boulevard property, and even with respect to that

property, there is no account of a governmental authority declaring that the slag at issue might

present a danger to human health or the environment. Indeed, the articles are replete with

references to state and federal agencies denying any such risk.

But taking things a step further, the Court could reasonably conclude that these articles in

no way could have or should have put *anyone* on notice of *anything* because, taken together, they

actually establish what Plaintiffs allege at paragraphs 63 through 68 of the Amended Complaint,

namely that government officials have done little but deny and dither for more than 40 years.

(*See, e.g.,* Exhibit 5 to Hogan Declaration (In a January 25, 1980 article titled "Radiation Levels

Prompt Call for More Tests," the reporter notes that "[e]xperts differ sharply on the effects of

low-level radiation but both state health and federal DOE officials insist the radiation finds pose

no immediate health threat to any humans." (Emphasis supplied.).)

That the message from government officials was muddled at least as late as 2006 is

established by the article appended to the Hogan Declaration as Exhibit 7. Referring to the

Niagara Falls Boulevard properties at issue in this case, the September 11, 2006 *Niagara Gazette*

article begins as follows: "[a] radiologically contaminated site on Niagara Falls Boulevard

previously determined to present no public health risk will be reevaluated by state officials this

week after being confronted by issues raised by a local researcher." (Emphasis supplied.) Of

---

Plaintiffs have sufficiently pled that there are continuing torts related to the ongoing presence of the radioactive
wastes and have sufficiently stated claims for relief, these questions must be answered later in this case.

course, it would be another ten years before the EPA would issue its Action Memo for that

property, in which the EPA, the *first* government agency to say so, declared for the *first* time that

"[a]ctual or threatened releases of hazardous substances from the [Niagara Falls Boulevard] Site,

if not addressed by implementing the response action selection in this Action Memorandum, may

present an imminent and substantial endangerment to public health, welfare, or the

environment." (Dkt. No. 34-7 at 11.) And as the Second Circuit noted in its Decision, it would

not be until four years after that—following the budget-starved, aborted-then-resumed removal

action—that the EPA would finally state definitively that the radioactive solid waste on the

Niagara Falls Boulevard property "did present a significant health risk making the site eligible

for a response action under EPA's Superfund removal program." (July 2020 Radiation Fact

Sheet, of which the Second Circuit takes judicial notice at footnote 2 of the Decision, and a copy

of which is attached for the Court's ease of reference as **Exhibit F** to the Horn Declaration.)

In sum, Defendants' 13 articles should be categorically rejected as evidence of purported

notice to Plaintiffs of the risks Defendants' radioactive waste posed to them. Furthermore, for

these reasons and those set forth in Plaintiffs' original opposition to Defendants' original motion

to dismiss, Plaintiffs respectfully submit that the Court should reject Defendants' arguments to

dismiss Plaintiffs' state law claims.

III.    **Alternatively, the Court should either grant Plaintiffs' cross-motion to
        extend the deadline to seek leave to file a new pleading or dismiss the
        Amended Complaint without prejudice to Plaintiffs' filing a new pleading.**

As set forth above, the law of the case following the Second Circuit Decision is that the

January 2018 Amended Complaint has been restored in its entirety and for all purposes, such that

Defendants should be made to file an Answer and defend against Plaintiffs' claims. The reason

Plaintiffs did not seek leave to amend their claims again was because Plaintiffs acted within their

rights by relying on the Second Circuit's revival of their RCRA claims and this Court's order

providing Defendants with an option to answer the claims just as they were pled in January 2018. As stated above, for the Second Circuit to have revived any claim without qualification (such as subject to an express direction to dismiss the claim without prejudice) in the face of an insufficient pleading is a legal impossibility, as would be this Court's order allowing Defendant to answer a deficiently pled claim. Nonetheless, should the Court conclude that Plaintiffs somehow misread the intent of the Court or the effect of the Second Circuit's vacatur and revival, they did so in good faith and Defendants will suffer no prejudice whatsoever resulting from a brief extension of the deadline to allow for Plaintiffs to file a new pleading. Accordingly, Plaintiffs seek relief, necessary and appropriate under the unique circumstances at hand, by way of their cross-motion for a minimally extended deadline to amend and/or supplement under FRCP 6(b)(1)(B), or, alternatively, for a dismissal without prejudice to Plaintiffs' filing of a new pleading.

## CONCLUSION

Notwithstanding Defendants' clear desire to avoid defending against Plaintiffs' claims and exhaust the patience of all involved, it is high time that this matter proceed forward substantively—six years after it was first brought. In light of the Second Circuit's decision to vacate this Court's dismissal against the remaining Defendants and revive Plaintiffs' RCRA claim (instead of affirming the dismissal entirely or even affirming the dismissal but directing that it be without prejudice subject to amendment), Defendants' second attempt to dismiss those claims, before discovery, must fail as a matter of law as it is barred by the doctrine of law of the case. Moreover, Defendants' attack on Plaintiffs' non-RCRA state law claims is procedurally improper and without merit in any event. Accordingly, for all of the reasons stated herein and those other reasons incorporated into this opposition as referenced above, Plaintiffs respectfully

13

request that the Court deny Defendants' second motions to dismiss in their entirety, and grant to

Plaintiffs such other and further relief as the Court deems just, proper, and equitable.

Alternatively, Plaintiffs request either that their cross-motion be granted so as to allow them

additional time to seek leave to amend and/or supplement the Amended Complaint, or,

alternatively, that any dismissal now be without prejudice to Plaintiffs' filing of a new pleading.


Dated:    October 10, 2023
          Buffalo, New York

                                          HARTER SECREST & EMERY LLP


                                   By:    /s/ John Horn
                                          _____
                                          John G. Horn, Esq.
                                          *Co-Attorneys for Plaintiffs*
                                          50 Fountain Plaza, Suite 1000
                                          Buffalo, New York 14202